UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MERRITT W.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

23-CV-0133-LJV
DECISION & ORDER

On July 27, 2016, the plaintiff, Merritt W. ("Merritt"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2]  *Id.*  On July 6, 2023, Merritt moved for judgment on the pleadings, Docket Item 8; on August 3, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 10; and on August 16, 2023, Merritt replied, Docket Item 11.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Merritt applied for Supplemental Security Income ("SSI").  SSI is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive both disability insurance benefits ("DIB") and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Merritt's motion in part and denies the Commissioner's cross-motion.[3]

## **BACKGROUND**

Merritt filed for benefits on July 27, 2016, alleging disability beginning April 25, 2009. *See* Docket Item 3 at 22. After his claim was denied, Merritt requested a hearing, *see id.* at 131-133, which was held on March 7, 2019, *see id.* at 40-77. About three weeks later, an ALJ denied his claim. *See id.* at 22-31.

Merritt then sought review in this Court, and on July 20, 2021, this Court vacated the ALJ's decision and remanded the matter for further administrative proceedings. *Id.* at 635-643. More specifically, this Court found that the ALJ erred in evaluating the opinion of Janine Ippolito, Psy.D., and remanded the matter so that the ALJ could properly evaluate that opinion and, if necessary, explain his reasoning for discrediting the portions favorable to Merritt. *Id.* at 642.

On remand, the Appeals Council returned the case to the same ALJ, who conducted another hearing on October 4, 2022. *Id.* at 533. On October 31, 2022, the ALJ concluded that Merritt was disabled beginning July 9, 2022, but not before that date. *Id.* at 556. Merritt then sought this Court's review for a second time.

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").  But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to

3

have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

**I.     THE ALJ'S DECISION**

As noted above, the ALJ found that Merritt was disabled beginning on July 9, 2022, but not before that. *See* Docket Item 3 at 557. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a), 416.920(a). *See id.* at 541-43.

At step one, the ALJ found that Merritt had not engaged in substantial gainful activity since applying for benefits on July 27, 2016. *Id.* at 543. At step two, the ALJ found that Merritt suffered from six severe, medically determinable impairments: bipolar disorder, posttraumatic stress disorder, depressive disorder, borderline personality disorder, anxiety disorder, and asthma. *Id.*

At step three, the ALJ found that Merritt's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 545-547. More specifically, the ALJ found that Merritt's physical impairment did not meet or medically equal listing 3.03 (asthma)*, id.* at 545, and that Merritt's mental impairments did not meet or medically equal listings 12.04*,* 12.06, 12.08, and 12.15 (depressive, bipolar, or related disorders), *id.* at 545. In assessing Merritt's mental impairments, the ALJ found that Merritt was: (1) moderately impaired in understanding, remembering, or applying information; (2) moderately impaired in interacting with others; (3) moderately impaired in concentrating, persisting,

or maintaining pace; and (4) moderately impaired in adapting or managing himself.  *Id.* at 545-546.

The ALJ then found that before July 9, 2022, Merritt had the residual functional capacity ("RFC")[4] to "perform a full range of work at all exertional levels" except that:

> [Merritt] must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants.  [He] could understand, remember, and carry out simple and routine instructions and tasks. He was able to work in a low-stress work environment consisting of simple, unskilled work, no supervisory duties, no independent decision-making required, no strict production quotas as with assembly line work, and minimal changes in work routine and processes.  [He] could have occasional interaction with supervisors [and] coworkers, and no or only incidental interaction with the general public.

*Id.* at 540.

At step four, the ALJ found that Merritt had no past relevant work.  *Id.* at 555.  But given Merritt's age, education, and RFC, the ALJ found at step five that before July 9, 2022, Merritt had been able perform substantial gainful activity as a hand packager, package sealer, or warehouse worker.  *Id.* at 556; *see Dictionary of Occupational Titles* 920.587-018, 1991 WL 687916 (Jan. 1, 2016); *id.* at 920.685-074, 1991 WL 687941 (Jan. 1, 2016); *id.* at 922.687-058, 1991 WL 688132 (Jan. 1, 2016).  Therefore, the ALJ found that although Merritt was disabled beginning on July 9, 2022, he had not been prior to that date.  *See* Docket Item 3 at 557.

---

[4] A claimant's RFC is the most he "can still do despite [his] limitations . . . in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

**II.    ALLEGATIONS**

Merritt argues that the ALJ erred in two ways.  Docket Item 8-1.  First, he argues that on remand, the ALJ again improperly evaluated the opinion of Dr. Ippolito.  *Id.* at 13.  Second, he argues that the ALJ erred in assessing an opinion from a treating provider, Tamie Gates-Coleman, LCSW.  *Id.*  This Court agrees that the ALJ erred and, because that error was to Merritt's prejudice, remands the matter to the Commissioner.

**III.    ANALYSIS**

For claims filed before March 27, 2017, such as Merritt's, the ALJ must evaluate every medical opinion received when determining a claimant's RFC.  20 C.F.R. §§ 404.1527(c); 416.927(c).  An ALJ generally is not required to "reconcile explicitly every conflicting shred of medical testimony," *Dioguardi v. Comm'r of Soc. Sec.,* 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (internal citation omitted), and "[t]here is no absolute bar to crediting only portions of medical source opinions," *Younes v. Colvin,* 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015).  But when the "RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  *Dioguardi,* 445 F. Supp. 2d at 297 (quoting S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)).

An ALJ also "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that . . . a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review."  *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original) (quoting *Young v. Barnhard,* 539 F.3d 995, 1002 (7th Cir. 2004).  Therefore, when "an ALJ . . . chooses to adopt only portions of a medical opinion[, he]

6

must explain his . . . decision to reject the remaining portion." *Raymer v. Colvin,* 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (citing *Younes,* 2015 WL 1524417, at 8). The "explanation need not be exhaustive: it is enough if the Court can 'glean the rationale of an ALJ's decision.'" *Chance v. Comm'r of Soc. Sec.,* 2019 WL 2123565, at *6 (W.D.N.Y. May 15, 2019) (quoting *Monguer v. Heckle,* 722 F.2d 1033, 1040 (2d Cir. 1983)).

Moreover, if an ALJ rejects an opinion or part of an opinion about a particular limitation, the ALJ must base that decision on other medical evidence and may not replace the medical opinion with the ALJ's lay judgment. *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support [an] ALJ's finding as to [a claimant's] ability to perform [a certain level of] work, it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for [a] competent medical opinion." (citation and original alterations omitted)).  "While an ALJ is free to resolve issues of credibility as to lay testimony or choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." *McBrayer v. Sec. of Health and Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983) (internal citations and quotation marks omitted).

On April 12, 2018, Dr. Ippolito opined that Merritt was "very limited" (unable to function 75% or more of the time) in his ability to perform complex tasks independently, and "moderately limited" (unable to function 50% or more of the time) in his ability to follow, understand, or remember simple instructions and directions; maintain attention and concentration for rote tasks; regularly attend a routine and maintain a schedule;

maintain basic standards of hygiene and grooming; and perform low stress and simple tasks.  Docket Item 3 at 486-487.

In assessing Dr. Ippolito's opinion, the ALJ gave "[l]esser weight . . . to the functional assessment check boxes as the terms used are undefined and the assessment is based on criteria for determining whether the claimant should work in exchange for social services benefits" which "are not the same criteria used for disability purposes."  *Id.* at 29.  This Court then remanded because the ALJ erred in "inaccurately referring to terms as undefined" and in rejecting the opinion simply because it was based on "criteria different than the criteria used for disability purposes."  *Id.* at 642 (internal quotation marks omitted).  The Court held that "the portion of Dr. Ippolito's assessment that the ALJ discounted—the check-box assessment—was not a conclusory statement that Merritt was disabled."  *Id.* at 640.  The Court also found that Dr. Ippolito's assessment was "at odds with an RFC that would require Merritt regularly to understand, remember, and follow simple and routine instructions and to perform simple and routine . . . tasks."  *Id.* at 641 (citing *id.* at 24.).

On remand, the ALJ found that while "[t]here is some support" for Dr. Ippolito's assessment "in general," her opinion still merited only partial weight.  *Id.* at 551.  The ALJ explained that "less weight is given to the check box portion of the assessment, which includes defined but conclusory statements that are overly restrictive and not fully supported by the record."  *Id.*  As an example, the ALJ noted that "Dr. Ippolito concluded that [Merritt] was moderately (unable to perform activities 50% of the time) and very (unable to perform activities 75% of the time) [limited] in [several] activities," but that "records also include reports that [Merritt] completed a CDL [Commercial Driver's

8

License] program and otherwise 'tinkers' regularly with motors/electronics, which is not consistent with th[o]se conclusory statements." *Id.* at 544.

The ALJ's analysis is a non sequitur. Although there is indeed evidence that Merritt attended classes that had "[n]o bookwork at all" and passed his CDL test, *id.* at 577, and that he tinkered with motors occasionally, *id.* at 580-582, that has little to do with whether he can perform complex tasks independently; follow, understand, or remember simple instructions; maintain attention and concentration; and perform low stress and simple tasks, *see id.* at 486-487 (Dr. Ippolito's opinion that Merritt is "moderately" or "very" limited in those areas and others). And the ALJ never explained how the evidence he cited undermined Dr. Ippolito's assessment.

Moreover, while the ALJ seemed more willing to accept Dr. Ippolito's "mental status examination findings" than the "checkbox portion of the assessment," *see id.* at 551, the exam findings supported the checked boxes. For example, and as the ALJ acknowledged, *see id.*, Dr. Ippolito noted that Merritt's speech was "mumbled and somewhat slurred," that he "appeared to have limited intellectual functioning" and "difficulty concentrating," that his cognitive functioning was estimated as "below average," and that his judgment was "poor," *id.* at 485. The ALJ did not explain how any of that was inconsistent with the checked boxes indicating Merritt's inability to perform complex tasks independently; to follow, understand, or remember simple instructions and directions; to maintain attention and concentration; to maintain a regular schedule; and to perform low stress and simple tasks. *Id.* at 551-552.

What is more, the ALJ did not note the similarity between Dr. Ippolito's opinion and that of Ms. Gates-Coleman, a treating social worker. Ms. Gates-Coleman opined

9

that Merritt's ability to understand, remember, and carry out very short and simple instructions was seriously limited and would frequently be less than satisfactory in any work setting.  Docket Item 3 at 1077.  Along the same lines, Dr. Ippolito opined that Merrit was unable to follow, understand, and remember simple instructions and directions 50% of the time.  *Id.* at 487.  Likewise, Dr. Ippolito found that Merritt was unable to perform complex tasks independently 75% of the time, *id.,* while Ms. Gates-Coleman found that Merritt could not satisfactorily understand, remember, and carry out detailed instructions or deal with the stress of semiskilled and skilled work independently, appropriately, and effectively on a sustained basis in a regular work setting*, id.* at 1078.  So while the ALJ correctly noted that Ms. Gates-Coleman is "not an acceptable medical source" entitled to deference, the fact that her opinion is so similar to Dr. Ippolito's suggests that the ALJ did not give either opinion the weight warranted.[5]

The Commissioner argues that the ALJ properly discounted Dr. Ippolito's opinion because that opinion "was inconsistent with the longitudinal record, including [Merritt's] work-like activities."  Docket Item 10-1 at 18.  But the ALJ did little more than conclude from Merritt's testimony about the CDL course and "tinkering" that Merritt could do more than what Dr. Ippolito opined.  *Id.* at 551.  And while the Commissioner argues that the ALJ properly evaluated Dr. Ippolito's opinion in light of Merritt's "side jobs" and evidence

---

[5] Under the regulations in effect at the time of Merritt's application, "acceptable medical sources" were licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  See 20 C.F.R. § 404.1513(a); SSR 06-03p.  "Other sources" included nurse practitioners, licensed clinical social workers, physician assistants, school teachers, counselors, relatives, and employers.  See 20 C.F.R. § 404.1513(d); SSR 06-03p.  Opinions from other sources "do not demand the same deference as those of a treating physician."  *Genier v. Astrue*, 289 F. App'x 105, 108 (2d Cir. 2008).

that he was "employed [and] . . . busy at his workplace" and "returned to working," the ALJ did not discount Dr. Ippolito's opinion because of those work-like activities. It is a foundational principle of administrative law that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Sec. & Exch. Comm'n v. Chenery Corp,* 318 U.S. 80, 87 (1943); *see also Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir. 1999) (quoting another source) (noting that courts "may not accept … *post hoc* rationalizations for agency action"). So the Commissioner's belated attempt to salvage the RFC lacks misses the mark.

In sum, although the ALJ was not required to accept everything about which Dr. Ippolito opined, *see Younes*, 2015 WL 1534417, at *8, he was required to support his assessment of the opinion with record evidence and to explain his reasoning in discrediting the portion favorable to Merritt. The ALJ still has not done that. And because the ALJ did not adequately explain his reasoning in discounting Dr. Ippolito's opinion, remand is required once again.

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 10-1, is DENIED, and Merritt's motion for judgment on the pleadings, Docket Item 8-1, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:    March 7, 2024
         Buffalo, New York

*Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE